IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM F. GROULX, | : Civil No. 3:17-cv-1224 |
| Petitioner | : (Judge Mariani) |
| v. | : |
| MARK GARMAN, | : |
| Respondent | : |

**MEMORANDUM**

I. **Background**

Petitioner William F. Groulx ("Groulx") files the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from the Judgment of Sentence entered on June 12, 2013, in Court of Common Pleas of Wyoming County criminal case CP-66-CR-0000195-2012, following a guilty plea to possession of child pornography under 18 Pa.C.S.A. § 6312(d)(1). (Doc. 1).

For the reasons set forth below, the petition for writ of habeas corpus, which is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), will be denied.

II. **State Court Factual and Procedural Background**

The following relevant facts and procedural history set forth below are extracted from the Superior Court of Pennsylvania's January 26, 2016 decision affirming the denial of Groulx's petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§

1

9541-9546:

> The certified record reveals that Groulx was arrested in Lackawanna County for indecent assault and related charges. He was represented by Michael Cowley, Esquire. While those charges were pending, Groulx was arrested in Wyoming County, where he was ultimately charged with 194 counts of possession of child pornography, a second-degree felony. **See** 18 Pa.C.S. § 6312(d)(1). Groulx hired Attorney Cowley to defend him in Wyoming County, as well. Attorney Cowley negotiated a plea agreement with the Commonwealth that allowed Groulx to plead guilty to a single count of possession of child pornography. However, because of a prior relevant conviction, Groulx was subject to a 25-year mandatory minimum sentence.[1] He was also required to undergo evaluation to determine if he was a sexually violent predator (SVP).
>
> On March 1, 2013, Groulx pled guilty in open court to a single count of possession of child pornography. On June 12, 2013, after receipt of a presentence investigative report and having been found to be an SVP, Groulx was sentenced to 300 to 600 months' (25 to 50 years) incarceration. No post-sentence motion or direct appeal was filed. On May 29, 2014, Groulx filed, *pro se*, this timely PCRA petition. Counsel was appointed and an amended PCRA petition was filed claiming Groulx was induced into pleading guilty after trial counsel informed him "he would not have a chance of being acquitted because trying to convince a bunch of little ol' ladies of [his] innocence in a small town would be hard to do." **See** Amended PCRA petition at ¶ 29.[2]

(Doc. 14-3 at 1, *Commonwealth v. Groulx*, 310 MDA 2016 at 1-10 (Pa. Super. Jan. 9, 2017) (unpublished memorandum)). On January 25, 2017, the Superior Court, finding that Groulx was not improperly induced into foregoing his constitutional right to a trial, affirmed the judgment of sentence. *Id.*

---

[1] **See** 42 Pa.C.S. § 9718.2(a)(1).

[2] Groulx also claimed trial counsel was ineffective for failing to file a post-sentence motion challenging the imposition of the mandatory minimum sentence pursuant to **Alleyne v. United States**, 113 S.Ct. 2151 (2013). The **Alleyne** decision was announced five days prior to the expiration of time for Groulx to file a post-sentence motion. However, as **Alleyne** does not apply to mandatory minimum sentences imposed because of prior convictions, this claim has been abandoned.

Thereafter, on July 12, 2017, Groulx filed the instant timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his petition, Groulx raises the following two claims for relief, (1) Ineffective Assistance of Counsel and (2) Illegal Sentence.  (Doc. 1).

## III.  Legal Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  28 U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.  Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).  A federal

court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (citations omitted).

Groulx's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## IV.  Discussion

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations

and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (internal quotation marks and citation omitted). The burden is on Groulx to prove entitlement to the writ. *Id.*

Under 28 U.S.C. § 2254(d)(1), a decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519, 520 (2003)). "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 75–76 (quoting *Williams*, 529 U.S. at 411). Rather, "[t]he state court's application of clearly

5

established law must be objectively unreasonable" before a federal court may grant the writ. *Andrade*, 538 U.S. at 75.

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See Rice v. Collins*, 546 U.S. 333, 338–339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' ") (quoting § 2254(e)(1)) (citing *Miller–El v. Dretke*, 545 U.S. 231, 240, (2005)). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. *Cullen*, 563 U.S at 185.

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Petitioner's initial claim that trial counsel was ineffective for unlawfully inducing Petitioner to plead guilty, stating that "if they were to proceed to trial 'he would not have a chance of being acquitted because trying to convince a bunch of old ladies of [his]

6

innocence in a small town would be hard to do,'" has been fully adjudicated on the merits during the state court proceedings.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." See *id.* at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). Second, under *Strickland*, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See *id.* at 694. The *Strickland* test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See *Strickland*, 466 U.S. at 687; *Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. See *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); *Foster v.*

*Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law' " for purposes of the AEDPA. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts. *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, *see Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to *Strickland*, *see Jacobs*, 395 F.3d at 107 n.9.

The Pennsylvania Superior Court affirmed the PCRA Court's rejection of this claim, finding the following:

> Our review reveals no basis upon which to disturb the PCRA court's ruling.
>
> At the June 1, 2015 PCRA hearing, Groulx testified on direct examination as follows:
>
>> Q: OK, and there came a point in time where you made a decision to plead guilty. How did that come about?
>>
>> A: I originally wanted to – you know, I asked them about bringing it to trial and Mr. Cowley told me that, you know, it's going to be very hard to convince quote, unquote a bunch of little old ladies in a

> small town of your innocence so that kind of swayed me to think differently of me going to take it to trial.
>
> Q: OK, at that time, though, did you want to go to trial or did you want to plead guilty?
>
> A: No, I originally kind of wanted to go to trial.
>
> Q: OK, why did you want to go to trial?
>
> A: Because of my innocence.
>
> Q: OK, and did you believe that you had defenses to the charges?
>
> A: Yes.
>
> Q: And had you not been advised by Attorney Cowley that, quote, little old ladies, unquote, would not be convinced that you had not committed this offense, would you have pled guilty?
>
> A: No.
>
> Q: OK, was that the ultimate statement that caused you to plead guilty?
>
> A: Yeah, I believe it was.
>
> Q: Well, it's not believe. It's yes or –
>
> A: It put doubt in my mind and made me second guess myself.

N.T. PCRA Hearing, 6/1/015, at 8-9.

However, at the guilty plea hearing, in open court, when questioned by the court, Groulx testified differently:

> Q: You're represented by Attorney Michael Cowley. Are you satisfied with this representation to this point?
>
> A: Yes.

9

Guilty Plea, 3/1/2013, at 13.

At the guilty plea hearing, Groulx also testified:

> Q: OK, very good. [Referring to his understanding of a possible lifetime registration under Megan's Law.] Sir, by pleading guilty in this matter, you are admitting in substance to the elements of this offense. Do you still wish to enter your guilty plea today?
>
> A: Yes, your honor.
>
> Q: And you understand that this is a twenty-five year mandatory minimum sentence?
>
> A: Yes, I do.
>
> Q: Alright, are you entering this plea under any threats or promises?
>
> A: No, your honor.
>
> Q: Are you acting on your own free will?
>
> A: Yes.

**Id.** at 15-16.

It is fundamental that "a person who elects to proceed guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at this plea colloquy." **Commonwealth v. Pollard**, 832 A.2d 517, 523 (Pa. Super. 2003) (citation omitted). After telling the court he was satisfied with counsel's representation, that he was acting under no threats or promises, that he admitted to the substance of the crime, and that he was pleading guilty on his own free will, Groulx cannot now prevail by claiming counsel had improperly induced him to forego the trial he wanted because he was, in fact, innocent.

Further, the certified record indicates that Attorney Cowley was not asked to confirm or deny the alleged statements regarding "little old ladies." Rather, Attorney Cowley testified as follow:

> Q: Are you aware of any viable defenses that may have been available to your client during this case?
>
> A: Not in the context of the facts that were developed, no.
>
> Q: Did you advise [Groulx] of his trial rights?
>
> A: Yes.
>
> Q: Did your client want to go to trial?
>
> A: No. This wasn't a do you want to go to trial or don't you want to go to trial question. This was a discussion over an hour at one particular meeting going over things, going over the computer room where he worked, going over the access to the computer room, going over who else had access to it, going over what I saw [regarding the photographs and movies depicting child pornography], going over what his rights were in the event of a criminal trial, discussing the potential consequences of the jury pool, and it's – it's just a fact in this type of case in my opinion that there are certain influences because of the type of evidence that is going to be presented. We discussed the fact that 194 counts could lead to separate sentences of 194 – on 194 charges and if you get one year each on 194 – on 194 charges consecutively [sic], you have no chance of getting out at 75 or 70 or anytime.
>
> Q: Was your client on board with this conversation you were having with him?
>
> A: Well, the word, on board – he was involved in it. He was [inaudible] with it. He was questioning it. We had very frank discussions about this and again, they were all – they were all in the library of the Wyoming County Prison and Bill was very – Bill was in charge of that library when he was there and he was very proud of the way he kept it an we had a good relationship and I

11

>  still think we have a relationship that has existed beyond this matter.
>
> Q: So, when the decision was reached to plead guilty, was that your decision or your client's decision?
>
> A: It was – it would always be the client's decision. It's not my decision to make a life-changing decision on behalf of my client, but it was made after discussions. It was not just, what do you want to do? It was, here's our options.
>
> Q: So, based upon your experience and the evidence that existed in this case, what is your opinion as to [Groulx's] likelihood of success at trial?
>
> A: I was very, very, very concerned that he would be looking at literally a conviction on hundred of counts. That was my – that was a very significant concern.

N.T. PCRA Hearing, 6/1/2015, at 26-28.

Tellingly, Attorney Cowley later testified on redirect examination:

> Q: OK, and I asked you – I want to ask you about this question about hiring a forensic computer expert. Whey was one not hired?
>
> A: Because of the discussion that I had with [Groulx] and because of the discussions that I had with one of the witnesses that he asked me to present.
>
> Q: Allow me to explore that a little bit. Did those discussion obviate the need for this expert?
>
> A: Yes.

**Id.** at 38.

The testimony of Attorney Cowley, clearly accepted by the PCRA court as credible, fully supports the PCRA court's determination that Groulx was properly advised of the various options open to him, including trial on the 194

12

> counts, and made an informed decision to plead guilty to one count of child pornography. Also, Groulx's entire premise is based upon a contention that was belied by Groulx's own sworn testimony at the guilty plea hearing. This further demonstrates the underlying claim has no merit. As such, Groulx was not improperly induced into foregoing his constitutional right to a trial. Accordingly, we affirm.

(Doc. 14-3, *Commonwealth v. Groulx*, 310 MDA 2016 at 1-10 (Pa. Super. January 9, 2017) (unpublished memorandum)).

In the context of a guilty plea, *Strickland's* prejudice test requires the petitioner to establish "that there is a reasonable probability that, but for counsel's errors [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Consistent with *Strickland*, Groulx was required to affirmatively demonstrate to the state court that plea counsel coerced and misled him into pleading guilty and that he was unlawfully induced to plead guilty, based upon counsel's alleged statements regarding "little old ladies," and that counsel's performance was therefore deficient. *Strickland*, 466 U.S. at 687-89. The state courts rejected these claims. The state courts determined that Groulx had been fully informed about the terms of his plea, the plea was not unlawfully induced, he understood the nature of the charges, and that he was facing a twenty-five year mandatory minimum sentence. The state courts thus found that counsel did not render ineffective assistance. Because the state courts found that Groulx failed to make an adequate showing on the performance prong, no analysis of the prejudice prong was required. *See Strickland*, 466 U.S. at 697. It is clear that the state court decisions are not contrary to, nor an

13

unreasonable application of, *Strickland*, and this ineffectiveness claim provides no basis for habeas relief.

Groulx's second ground for relief is that his trial counsel failed to challenge the legality of his sentence through post sentence motions.  (Doc. 1).   Specifically, Petitioner states that "since the date of sentencing, the U.S. Supreme Court decided *Alleyne*, declaring that it is unconstitutional to impose a mandatory minimum sentence without a finding, by a jury and beyond a reasonable doubt that the element effectuation [*sic*] the mandatory minimum sentence has been committed or was even proven to exist." *Id*.

In addressing this issue, the Superior Court found the following:

> Groulx also claimed trial counsel was ineffective for failing to file a post-sentence motion challenging the imposition of the mandatory minimum sentence pursuant to **Alleyne v. United States,** 113 S.Ct. 2151 (2013).   The **Alleyne** decision was announced five days prior to the expiration of time for Groulx to file a post-sentence motion.   However, as **Alleyne** does not apply to mandatory minimum sentences imposed because of prior convictions, this claim has been abandoned.

(Doc. 14-3, *Commonwealth v. Groulx*, 310 MDA 2016 at 3 (Pa. Super. January 9, 2017) (unpublished memorandum)).

Groulx was sentenced under 42 Pa.C.S. 9718.2, which imposes a mandatory sentence when there is a previous conviction of a sexual offense.   (Doc. 14-3, *Commonwealth v. Groulx*, 310 MDA 2016 at 2 (Pa. Super. January 9, 2017) (unpublished memorandum).

In *Alleyne v. United States*, 570 U.S. 99 (2013), the United States Supreme Court held that facts that increase mandatory minimum sentences must be submitted to the fact-finder and determined beyond a reasonable doubt. *Id.* at 103. Recently, the Pennsylvania Supreme Court recently clarified *Alleyne*'s application to mandatory sentences based on previous convictions in *Com. v. Resto*, 179 A.3d 18 (Pa. 2018), when it said, "[A] conviction returned by a jury to which a mandatory minimum sentence directly attaches is not the same as an aggravating fact that increases a mandatory minimum sentence.... [S]uch a conviction is itself a contemporaneous jury determination, and the concern of *Alleyne* is with sentencing enhancements tied to facts to be determined by a judge at sentencing." *Id.* at 21. Furthermore, this Court notes that under prevailing federal jurisprudence, prior convictions are not treated as a type of fact implicating *Alleyne*. *See Com. v. Bragg*, 133 A.3d 328, 332-33 (Pa. Super. 2016) (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) ), aff'd 169 A.3d 1024 (2017) (*per curiam*).

Thus, Groulx's counsel did not perform deficiently by failing to assert that Groulx's sentence was illegal pursuant to *Alleyne*. Such a claim would have been baseless, and it is well settled that counsel cannot be deemed ineffective for failing to raise a meritless claim. *See United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015) (citation omitted). Because Groulx identifies no deficient performance in ground two, we must deny this ineffective-assistance claim as well. *See Strickland*, 466 U.S. at 697.

V.   **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Groulx fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Groulx from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals. *See* FED. R. APP. P. 22(b)(1).

VI.   **Conclusion**

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order shall issue.

Dated: September 18, 2020

Robert D. Mariani
United States District Judge

16